# Exhibit B

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P. C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO
LAWRENCE S. BADER
BARRY A. BOHRER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
STEPHEN M. JURIS
ROBERT G. MORVILLO
BARBARA MOSES*
JODI MISHER PEIKIN
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
JOHN J. TIGUE, JR.
CYRUS R. VANCE, JR.
RICHARD D. WEINBERG

COUNSEL
CHRISTOPHER J. MORVILLO
E. SCOTT MORVILLO
GREGORY MORVILLO
*ALSO ADMITTED IN CALIFORNIA AND D.C.
**ALSO ADMITTED IN CONNECTICUT

MICHAEL C. SILBERBERG
1940-2002

565 FIFTH AVENUE
NEW YORK, N.Y. 10017
TELEPHONE
(212) 856-9600
www.maglaw.com
FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL

(212) 880-9450

JENNIFER L. ACHILLES
DAVID C. AUSTIN
LAWRENCE M. BARNES*
BENJAMIN S. FISCHER
ELIZABETH HAINES**
JAMES V. HAYES****
RACHEL HEMANI
TIMOTHY M. HUDSON**
RENÉE L. JARUSINSKY
JASMINE JUTEAU
THOMAS M. KEANE
RACHEL M. KORENBLAT
KRISTY WATSON MILKOV
ELLEN M. MURPHY
SARAH J. NORTH
CLAUDIO R. OCHOA***
JANEY ROUNTREE****
ASHLEY E. RUPP
ANDREW J. SCHELL
E. SCOTT SCHIRICK
MARYANNE SEXTON
KATHRYN M. SPOTA
DAVID STANKIEWICZ**
JERROLD L. STEIGMAN
JAMES R. STOVALL
BARBARA L. TRENCHER
AMY M. TULLY
KEFIRA R. WILDERMAN

*ALSO ADMITTED IN N.J.
**ADMISSION PENDING
***ALSO ADMITTED IN WASHINGTON, D.C.
****ADMITTED IN ILLINOIS ONLY
†ALSO ADMITTED IN MASSACHUSETTS

March 24, 2008

**BY E-MAIL AND U.S. MAIL**

Assistant United States Attorney Deborah E. Landis
Special Assistant United States Attorney John Sullivan
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Re:    United States v. Coplan, et al., 07 Cr. 453 (S-1) (SHS)

Dear Counsel:

We write this letter on behalf of Robert Coplan, Martin Nissenbaum, Richard Shapiro, Brian Vaughn and Charles Bolton (collectively referred to as "the defendants"). While we recognize that you are still in the process of providing document discovery, we write to set forth our detailed requests in writing. In order to permit the defendants to file appropriate motions by the Court's May 5 deadline and adequately prepare for trial, we ask that you furnish the following discovery material pursuant to Rule 16 of the Federal Rules of Criminal Procedure; Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, including Giglio v. United States, 405 U.S. 150 (1972), United States v. Agurs, 427 U.S. 97 (1976), United States v. Bagley, 473 U.S. 667 (1985), Kyles v. Whitley, 514 U.S. 419 (1995), United States v. Gil, 297 F.3d 93 (2d Cir. 2002), and United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007); the Jencks Act; the Fifth and Sixth Amendments to the United States Constitution; and applicable rules of prosecutorial ethics and Justice Department regulations. If any of the requested materials are in the voluminous discovery that the government has produced or is in the process of producing, please identify where they can be found. We also request that you notify us on or before April 14,

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 2

2008, specifically of any material that you do not intend to make available, so that our May 5
motions can address any disagreements and permit the Court to rule on them.

### Discovery Requests

        1.      In addition to the proffer session notes previously produced, any written or
recorded statement, confession, or admission or the substance of any oral statements relating,
directly or indirectly, to the charges in this case made by any of the defendants to investigating
officers or to third parties. This request includes, without limitation:

        a.      Any relevant written or recorded statements made by any of the
defendants, or copies thereof, within the possession, custody or control of any
federal, state, county or municipal government agent or attorney (hereinafter
"government agent"), the existence of which is known, or by the exercise of due
diligence may become known to a government agent;

        b.      any statement or admission by any of the defendants which may
have been incorporated in any report, memorandum, transcript, or other document
or recording prepared by a government agent, or by any person working in
conjunction with such agents;

        c.      that portion of any written record containing the substance of any
relevant oral statement made by any of the defendants whether before or after
arrest in response to interrogation by any person then known by that defendant to
be a government agent; and

        d.      the substance of any other relevant oral statement made by any of
the defendants whether before or after arrest in response to interrogation by any
person then known by that defendant to be a government agent.

        2.      Any written or recorded statement, or the substance of any oral statement,
made by anyone, including any co-defendant, that inculpates any of the other defendants, the use
at trial of which would raise issues under Crawford v. Washington, 541 U.S. 36 (2004), or
Bruton v. United States, 391 U.S. 123 (1968). [1] This request includes, but is not limited to, any
testimony or non-public correspondence provided by any co-defendant to the Internal Revenue
Service ("IRS") during the course of its investigation of the events that form the basis of the
indictment in this case. In addition, please identify specifically the testimonial statements of any

---

[1] On July 2, 2007, you produced to counsel for each of the Ernst & Young LLP defendants documents containing
statements made by their client, and only their client, during proffer sessions with the Government. We request that
you produce to counsel for each defendant documents containing statements made by the other defendants during
proffer sessions with the Government, if applicable.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 3

of the defendants you intend to utilize in your case in chief so that we can timely move for any relief to which the defendants may be entitled pursuant to, among other things, Rule 8 of the Federal Rules of Criminal Procedure.

3.     A copy of any prior criminal record of any of the defendants, if the government believes such to exist. Fed. R. Crim. P. 16(a)(1)(D). We note that in your June 22, 2007 letter, you said that to your knowledge, none of the defendants had a prior criminal record. Please confirm that your understanding remains the same, specifically with respect to Charles Bolton.

4.     All books, papers, documents, photographs, videotape recordings, audiotape recordings, microfilm, microfiche, computer data storage systems or tangible objects, or copies or portions thereof (hereinafter referred to in this letter as "documents"), that were obtained by or obtained from or belong to any of the defendants. This request includes any documents obtained from or which were the property of any employee or agent of, or professional consultant to any of the defendants, in either his personal or business capacity. Fed. R. Crim. P. 16(a)(1)(E)(iii). This request includes, but is not limited to, documents previously produced in response to grand jury subpoenas.

5.     All documents, or copies or portions thereof, which are within the possession, custody or control of the government, which are material to the preparation of the defense. Fed. R. Crim. P. 16(a)(1)(E)(i). This request includes, but is not limited to, all documents produced to the government, whether or not pursuant to a grand jury subpoena, by the entities and individuals referenced in Exhibit A, which is attached hereto.[2] The request also includes, but is not limited to, all documents the government believes support the allegations in the indictment and all documents concerning the transactions referenced in the indictment. Finally, the request includes any additions to the set of "Core" documents you produced to us shortly after the defendants were indicted.

6.     All documents, or copies or portions thereof, which are within the possession, custody or control of the government that the government intends to use at trial in its case in chief. Fed. R. Crim. P. 16(a)(1)(E)(ii). Given the volume of documents in this case, we request that you specifically identify from among the documents produced pursuant to Rule 16 the documents in this category, both to enable counsel to prepare for trial effectively and to

---

[2] We note that the government has already produced voluminous discovery that falls within the parameters of this request. Before that production commenced you indicated that you had received documents from various entities implicated in this and other investigations. Exhibit A contains a list of those individuals and entities and any additional entities we believe have produced documents to the government. As stated above, we request that the government produce all documents it has received from those entities. In Exhibit A we also identify several deficiencies that currently exist in the government's production, which we request you remedy.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 4

afford us an opportunity to file appropriate motions. <u>See, e.g., United States v. Turkish</u>, 458 F. Supp. 874, 882 (S.D.N.Y. 1978), <u>aff'd</u>, 623 F.2d 769 (2d Cir. 1980).

Moreover, given the volume of materials being produced on DVDs or on computer hard drives, please specifically identify any documents that were printed out by the government during the course of its investigation of this case, or presented to any grand jury hearing evidence in this case, but which are being produced to the defendants in electronic (rather than paper) form.

7.      Any and all photographs and audiotape and videotape recordings that were made in conjunction with this case, or which relate in any manner to this case, that are in the possession, custody or control of the government. Fed. R. Crim. P. 16(a)(1)(E).

8.      All results or reports of physical or mental examinations, scientific tests or experiments, or copies thereof, and all documents referring or relating to such reports, that were conducted in connection with any investigation of the charges contained in the indictment, including, but not limited to, forensic analyses of any documents, physical, mental or polygraph examinations, handwriting analyses, finger-print comparisons and electronic testing. Fed. R. Crim. P. 16(a)(1)(F). We note that in your June 22, 2007 letter, you said that you had no such reports in your possession. Please confirm that this remains the case.

9.      With respect to evidence that the government intends to use at trial under Rules 702, 703 or 705 of the Federal Rules of Evidence, a list of the names of the persons the government intends to call as expert witnesses, a written summary describing the witnesses' opinions, the bases and reasons for those opinions and the witnesses' qualifications. Fed. R. Crim. P. 16(a)(1)(G).

10.     As a predicate to motions pursuant to Rule 12 of the Federal Rules of Criminal Procedure:

a.      Please confirm that no evidence or other information in the government's possession, custody, or control was obtained by a search and seizure. If any evidence was obtained by search and seizure, please provide a description of such evidence and if said search was warrantless, set forth the nature of the information upon which the search was based and the date said information was received by the government;

b.      Please confirm that no evidence or other information in the government's possession, custody, or control was obtained through the use of a beeper, other tracking device, mail cover or electronic or audio surveillance of

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 5

any kind. If any evidence was obtained through these investigative techniques, please:

  i.    set forth the date, time, place and a description of each interception;

  ii.   provide any and all documents related to or reflecting any information derived therefrom;

  iii.  inform us as to whether any recording or other result of electronic or audio surveillance has been scientifically tested, altered or treated in any way and if so, please:

       a.   set forth the time, date, place and a description of each test or alteration;

       b.   identify the examiner, and

       c.   provide a copy of any reports and all documents relating or referring to such reports.

c.      Please inform us as to whether any reports of communications or notes of any interview requested herein have been or are intended to be discarded or destroyed. In the event the government obtained any information through search and seizure or electronic or audio surveillance please also inform us as to whether any such tapes or fruits of any such interception or search have been destroyed and identify such materials in sufficient detail to permit us to make a timely request to the Court for appropriate relief.

d.      Please inform us whether any persons were present during grand jury proceedings other than the grand jurors, the witness under examination, the court reporter and Assistant United States Attorneys.

e.      Please inform us whether any grand jury materials, including grand jury transcripts or any documents or information produced to the grand jury, were disclosed or released to any person other than the grand jurors, court reporters and Assistant United States Attorneys.

If any evidence was obtained through any means set forth in subparagraphs (a) and (b), we also request all relevant applications or other supporting documents for court orders, all such court orders, all reports by the government to the court, and all tapes, logs, transcripts and line sheets resulting from such interception or surveillance.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 6

     11.    Pursuant to Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure and Rule 1006 of the Federal Rules of Evidence, please inform us whether the government will seek to offer any chart, summary or calculation in evidence and if so, please make available for inspection and copying any such chart, summary or calculation, as well as all writings, recordings, photographs, videotape recordings or other information on which such charts, summaries or calculations are based.

     12.    Pursuant to the provisions of Rule 104 of the Federal Rules of Evidence, Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure and the defendants' right to effective representation by counsel and a fair trial, we request that the government disclose whether it intends to offer in its case in chief as a statement by the defendants any of the following and if so, that the government identify the applicable statements:

     a.    Any statement made by any of the defendants in either an individual or a representative capacity, Fed. R. Evid. 801(d)(2)(A);

     b.    Any written or recorded statement or the substance of any oral statement as to which any of the defendants manifested his adoption or belief in its truth, Fed. R. Evid. 801(d)(2)(B);

     c.    Any written or recorded statement or the substance of any oral statement made by another individual or entity which was purportedly authorized by any of the defendants, or is deemed to be an admission by any of them, Fed. R. Evid. 801(d)(2)(C);

     d.    Any statement by an agent or servant of any of the defendants concerning a matter within the scope of his agency or employment made during the existence of such a relationship, Fed. R. Evid. 801(d)(2)(D); or

     e.    Any written or recorded statement, or the substance of any oral statement, by a co-conspirator made during the course of or in furtherance of the conspiracy alleged in the indictment, Fed. R. Evid. 801(d)(2)(E).

     13.    Pursuant to the Fifth and Sixth Amendments to the United States Constitution, Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure and Rules 403 and 404(b) of the Federal Rules of Evidence, we request that, as soon as possible, the government disclose all evidence of other similar crimes, wrongs or acts, allegedly committed by the defendants, upon which the government intends to rely. If the government intends to offer any such evidence, please set forth the date, place and nature of each "similar" act so that we can properly ask the Court for a determination concerning its admissibility pursuant to Fed. R. Evid. 403 and 404.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 7

14.     Further to Mr. Tucker's February 29, 2008 letter, we request that the government (1) disclose the impanelment and adjournment dates of each grand jury that heard evidence concerning this case, (2) disclose all information relating to the attendance of individual jurors for each day on which the grand jury convened, including the day the indictment was returned, (3) confirm that the group of jurors that voted for indictment (both the original and the superseder) were present to hear the evidence the government presented in support of indictment, (4) disclose the legal instructions provided to the grand jury before the indictment was returned and (5) provide us with a copy of the signed true bill.

15.     All defendants requested that the Department of Justice's Tax Division review, prior to indictment, the charges proposed by the Office of the United States Attorney for the Southern District of New York. We request that the government inform us whether any current member of the prosecution team was present at the final Tax Division meeting wherein the decision was made to allow the United States Attorney's Office to proceed with the indictment of the defendants, or participated in any internal Tax Division discussions leading up to or substituting for such a meeting.

16.     We request that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case in chief. See United States v. Savin, 2001 WL 243533 (S.D.N.Y. 2001); United States v. Rueb, 2001 WL 96177 (S.D.N.Y. 2001). We also request that the government provide marked copies of the exhibits it intends to offer in its case in chief. With respect to the timing of the provision of these materials, we suggest that the parties follow the schedule as ordered in the KPMG case. On April 7, 2006, the Court directed the government to provide a witness list and marked exhibits to the defendants approximately two months before trial. The Court directed the defendants to provide a list of defense witnesses and marked exhibits to the government approximately one month before trial. We are prepared to enter into a stipulation reflecting this schedule. Please inform us whether you would agree and stipulate to such a schedule.

17.     Given the scope of this case, we request production of all materials required to be produced under 18 U.S.C. § 3500 no later than two months before the trial date. This request follows the schedule established by the Court in the KPMG matter in its July 19, 2006 order. We are prepared to enter into a stipulation reflecting this schedule. Please inform us whether you would agree and stipulate to such a schedule.

18.     Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, including United States v. Agurs, 427 U.S. 97 (1976), Giglio v. United States, 405 U.S. 150 (1972), and United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007), and pursuant to the Department of Justice's Policy Regarding Disclosure of Exculpatory and Impeachment Information, set forth in section 9-5.001 of the U.S. Attorney's Manual, we request (i) immediate disclosure of all exculpatory material in the government's possession, custody, or control or

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 8

otherwise known to the government; and (ii) disclosure at least 90 days prior to the trial date of all impeachment material in the government's possession, custody or control or otherwise known to the government.

Exculpatory and impeachment "material" includes not only documents or other tangible items (including written statements or statements that have been reduced to writing by the government), but also the substance of any statements made to the government that have not been reduced to writing. In other words, if a witness's statements to the government contain exculpatory or impeachment material, <u>Brady</u> and its progeny require the government to disclose the substance of those statements, whether or not they have been reduced to writing. <u>See</u> <u>United States v. Rodriguez</u>, 496 F.3d 221 (2d Cir. 2007).

Although explained in detail below, this request generally seeks copies of all materials known to the government, or which through due diligence may be learned from the investigating agents or witnesses in this case or persons interviewed in connection with the investigation, that are favorable to, or tend to mitigate any punishment of, the defendants or which may lead to such materials. Please include the names, addresses and telephone numbers of all persons who know or may know of any such favorable material or who may lead to persons or material which may be favorable to the defendants. Also include all written or recorded statements or the substance of oral statements by any person which are in any way conceivably inconsistent with the testimony or expected testimony any witness will give at trial and any other evidence that otherwise reflects upon the credibility, competency, bias or motive of the government's witnesses.

## Detailed Requests for Exculpatory Material

a.    All information indicating that any client of Ernst & Young LLP ("E&Y") who participated in any "tax shelter" identified in the indictment (i.e., "CDS," "COBRA," "PICO," and the "Add-On") has, at any time, asserted that he, she or it had a profit motive in entering into any such transaction, including statements made to the IRS (or any division thereof, including the Examination Division, the Office of Appeals, the Office of Tax Shelter Analysis, or the Office of Chief Counsel) or to any court (including the United States Tax Court, any United States District Court, or the Court of Federal Claims) or any arbitration panel.

b.    All information indicating that any law firm referred to in the indictment (including those designated as "A," "B," "C" and "D") stated or believed that any opinion issued by such firm was legally correct, and/or that the factual representations contained therein were true.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 9

  c. All information indicating that any client of E&Y who participated in any "tax shelter" identified in the indictment did, in fact, have the potential to make a profit in excess of the costs of the transaction in which he, she or it participated.

  d. All information indicating that any client of E&Y who participated in any "tax shelter" identified in the indictment has been allowed all or any part of the losses, deductions, credits or benefits associated with such transaction by the IRS, or any court.

  e. All information indicating that any client of E&Y who participated in the CDS transaction has, at any time, stated that he, she or it in fact regarded "the various investments of the partnership . . . as comprising one coherent business philosophy" and/or that "diversity of investments was an important element" in that person's decision to invest in a CDS partnership.

  f. Any analysis performed, at any time, showing that it was possible for the CDS partnerships, or any of them, to profit from short term market movements.

  g. Any information showing that any client who participated in a CDS partnership was, in fact, personally liable for the debts of the partnership.

  h. All information indicating that E&Y clients who participated in COBRA transactions did, in fact, have the possibility of earning a profit on the transactions, and the amount of such potential profit.

  i. All information indicating the position that any E&Y client who participated in any COBRA transaction did, as a matter of law, have tax basis in the partnership equal to the costs of the long option.

  j. All information indicating that additional cash contributed to a COBRA partnership by any client of E&Y who participated in that COBRA partnership was, in fact, used to engage in trading activity.

  k. All information indicating that any client of E&Y who participated in a COBRA transaction has, at any time, stated that he, she or it engaged in the transaction or contributed a partnership interest to an S corporation for substantial non-tax business reasons.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 10

      l.     All information indicating that E&Y's decision to stop marketing COBRA was for business reasons, and not because E&Y formed a conclusion that COBRA did not have meaningful business purpose.

      m.    All information indicating that any person who was managing activity in the CDS trading partnerships suggested consolidating option transactions in a new LLC.

      n.     All information indicating that the suggestion to consolidate the CDS trading partnerships was presented to the E&Y defendants by Charles Bolton.

      o.     All information indicating that the E&Y clients who participated in the Add-On transaction had the possibility of making a profit in excess of the costs of the transaction, and the amount of such potential profit.

      p.     All information indicating that any E&Y client who participated in a PICO transaction has, at any time, stated that he, she or it intended to use the S corporation involved in the transaction as his, her or its principal (or significant) investment vehicle, and/or for asset protections and/or for estate planning purposes, including information indicating that such person did in fact use the S corporation in any such manner.

      q.     All information indicating that any E&Y client who participated in a PICO transaction continued to conduct trading activities in his, her or its PICO entity after redeeming out Company Z shareholders.

      r.     All information indicating that the IRS was aware of the existence and nature of the CDS, COBRA, Add-On and PICO transactions, or any of them, prior to receiving submissions related to E&Y's "tax shelter" transactions in 2002 and thereafter.

      s.     All information indicating that the IRS did not rely on, and did not intend to rely on, any statement related to business purpose, profit potential or investment motive made by any E&Y client in any submission made to the IRS as part of the disclosure initiative.

      t.     All information indicating that Charles Bolton was not involved in the E&Y promoter penalty examination.

      u.     All information indicating that the E&Y defendants were not involved with the Bolton Capital Planning promoter penalty examination.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 11

      v.      All information indicating that E&Y clients who were represented by professionals other than E&Y or who represented themselves, submitted information in response to Information Document Requests ("IDRs") issued by the IRS in taxpayer audits asserting that they had a substantial non-tax business purpose and/or profit motive for engaging in any of the "tax shelter" transactions.

      w.      All information indicating that the E&Y defendants and Charles Bolton were not aware of or did not have any role in procuring David Smith's testimony to the IRS on December 9, 2003.

      x.      All information indicating that the E&Y defendants were not aware of or did not have any role in procuring Charles Bolton's testimony to the IRS on April 12 and 13, 2005.

      y.      All information indicating that Charles Bolton was not aware of or did not have any role in procuring Brian Vaughn's testimony to the IRS on June 12, 2002.

      z.      All information indicating that Charles Bolton was not aware of or did not have any role in procuring Robert Coplan's testimony on June 20, 2002.

      aa.      All information indicating that Proskauer Rose LLP ("Proskauer") did not rely upon the document referred to in the indictment as a Certificate of Facts in drafting its Opinion Letter for the "Tradehill transaction".

      bb.      All information indicating that Proskauer drafted the Certificate of Facts for the Tradehill transaction.

      cc.      All information indicating that the E&Y partners who invested in the Tradehill transaction had a reasonable possibility of earning a profit, and the amount of such potential profit.

      dd.      All information indicating that the E&Y partners that invested in the Tradehill transaction believed that they had a reasonable possibility of earning a profit, and the amount of such potential profit.

      ee.      All information indicating that the E&Y partners who invested in the Tradehill transaction discussed with either Proskauer or Diversified Group Inc. ("Diversified") the objective of utilizing the Euro as the currency involved in the transaction in order to hedge their exposure to the Euro through their ownership of Cap Gemini stock.

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 12

      ff.     All information indicating that no E&Y partner who invested in the Tradehill transaction was the source of the representation in IDR #2 that there was no expectation of a referral of future business to Proskauer.

      gg.     All information that the choice of Proskauer to draft opinion letters on behalf of certain E&Y clients in connection with the PICO transaction was not related to Proskauer's involvement in the Tradehill transaction.

      hh.     The names and addresses of all persons whom the prosecution, its agents and its representatives, believe to have favorable information with reference to the charges contained in the indictment, and the substance of that information.

      ii.     All documents or any other information reflecting or relating to any debate, discussion or disagreement within the IRS or any other government agency concerning the legitimacy, legality or permissibility of any transaction mentioned in the indictment.

**Detailed Requests for Impeachment Material**

      jj.     Any and all records and information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including, but not limited to, relevant "rap sheets" of each witness the government intends to call at trial;

      kk.     Any and all records and information revealing misconduct, criminal acts or bad acts of any witness the government intends to call at trial;

      ll.     Any and all considerations or promises of consideration given during the course of the investigation or prosecution of this matter by any law enforcement officials, including prosecutors, agents, police or informers, to or on behalf of any witness the government has interviewed or intends to call at trial, or any such consideration or promises requested by such witness, or any such consideration expected or hoped for by any such witness at any future time. Such "consideration" refers to anything that arguably could be of value or use to a witness or a witness' employer, including, but not limited to: (i) formal or informal, direct or indirect leniency, favorable treatment or recommendations, or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative or other matter involving the state or federal government, or any other matter involving the state or federal government, any other authority or other parties; (ii) civil, criminal or tax immunity grants to a witness; (iii) reductions in or agreements not to assess any

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 13

tax liabilities, interest or penalties; (iv) payments of money, rewards or fees, witness fees and special witness fees; (v) provisions of food, clothing, transportation, legal services or other benefits; (vi) letters to anyone informing the recipient of a witness' cooperation; (vii) recommendations concerning federal aid or benefits; (viii) promises to take affirmative action to help the status of a witness in a profession, business or employment, or promises not to jeopardize such status; (ix) aid in efforts in securing or maintaining the business or employment of a witness; and (x) anything else that arguably could reveal an interest, motive or bias in a witness in favor of the prosecution or against the defendant, or act as an inducement to testify or to color the witness' testimony;

mm.    Any and all statements—formal and informal, oral or written—by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the government has interviewed or intends to call as a witness at trial pertaining in any way to the possibility, likelihood, course or outcome of any government action—state or federal, civil or criminal—or immigration matters against the witness, or anyone related by blood or marriage to the witness;

nn.    Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness whom the government has interviewed or intends to call at trial, or anyone related by blood or marriage to the witness, with the purpose or effect of inducing testimony favorable to the government or suppressing testimony favorable to any defendant; criminal prosecutions, investigations or potential prosecutions pending, threatened or which could be brought against any such witness, or anyone related by blood or marriage to the witness; any probationary, parole or deferred prosecution status of any such witness, or anyone related by blood or marriage to the witness; and any civil, Tax Court, Court of Claims, administrative or other pending or potential legal disputes or transactions involving any such witness, or anyone related by blood or marriage to the witness, and the state or federal government, or over which the state or federal government has real, apparent or perceived influence;

oo.    A list of any and all requests or demands made to the government by any witness whom the government intends to call at trial that arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action on behalf of the witness (regardless of whether or not the government has agreed to provide any favorable action);

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 14

pp.    All documents and other evidence regarding drug and alcohol usage or dependency by any individual the government intends to use as a witness at trial, including, but not limited to, records relating to treatment of such individual in any federal, state, territorial, city or military drug or detoxification program;

qq.    All documents and other evidence regarding any physical or mental disease, disability or disorder affecting any individual the government intends to use as a witness at trial, or affecting any family member of any such witness, including but not limited to records of hospitalization or other treatments for a physical or mental disease, disability or disorder;

rr.    Any material not otherwise listed that reflects or evidences the motivation of any witness to cooperate with the government or reflects or evidences the competency or credibility of the government's witness or the witness' bias or hostility against any of the defendants;

ss.    A list of all other judicial proceedings involving a criminal matter in which any person who is a potential prosecution witness in this action participated as a witness, was identified as an unindicted co-conspirator or an aider and abettor or was charged as a defendant;

tt.    Any statements or documents, including, but not limited to, grand jury testimony and federal, state, and local tax returns made or executed by any potential prosecution witness at the trial in this action which the prosecution knows, or through reasonable diligence should have reason to know are false;

uu.    The existence and identification of each occasion on which any witness, including any witness who is or was an informer, accomplice, co-conspirator or expert, has testified in any judicial or administrative proceeding, before the grand jury, any court, or other tribunal or body, or otherwise has given an official narration regarding any of the defendants, the investigation or the facts of this case;

vv.    Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness, which in any way contradicts or is inconsistent with or different from other oral or written statements he or she has made or his or her anticipated trial testimony;

ww.    Any written or oral statements, whether or not reduced to writing, made to the prosecution, its agents or representatives by any individual, whether

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 15

or not that individual is or may be a witness, which in any way contradict, or are inconsistent with or different from any statements made by a potential prosecution witness or the anticipated trial testimony of any potential prosecution witness, and the name and address of the individual making any such statement;

      xx.    Any requests prepared by the prosecution for permission to grant immunity or leniency to any witness, whether or not such request was granted;

      yy.    Any statements read or given by the government to the Departments of Pretrial Services or Probation in connection with the prosecution or conviction of any prosecution witness or potential prosecution witness;

      zz.    Copies of all letters or memoranda written to the court in connection with the sentencing of any potential prosecution witness;

      aaa.    Any and all other records and/or information that arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecutor's evidence;

      bbb.    The same records and information requested in items jj through aaa with respect to each non-witness declarant whose statements may be offered in evidence;

      ccc.    Copies of any and all records of law enforcement or other governmental agencies reflecting intra departmental disciplinary action taken against any law enforcement or agency official who will testify in this proceeding, including all such records from any governmental agency for which the witness previously worked; and

      ddd.    Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards or recognition of any kind received by, or requests for any commendations, awards or recognition of any kind made by, any government agent or law enforcement officer for any work, action or conduct undertaken in connection with the investigation and prosecution of this case.

Each of these requests calls for all responsive items within the possession, custody or control of the government, or items the government knows to exist or could know to exist by the exercise of reasonable due diligence. As used in this letter, the terms "government," "prosecutor(s)," "you" and "your" refer not only to the United States Attorney's Office for the Southern District of New York, but also to all federal, state or local agencies that have provided

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 16

assistance to, or are allied with, the U.S. Attorney's Office, including, but not limited to, the IRS
and the Department of Justice Tax Division.

Each request is of a continuing nature and calls for supplementation as soon as the
government discovers additional responsive evidence, information or material.

We also request that the government preserve and maintain all relevant notes,
reports and recordings prepared by or for government agents or prosecutors, as well as any
document, paper, tangible object, tape recording or other potential item of evidence which is not
or may hereafter come within the government's possession, the production of which is requested
in this letter.

Very truly yours,

John J. Tigue, Jr.

Paula M. Junghans

Brian D. Linder

Peter H. Barrett

Deborah E. Landis, Esq.
John Sullivan Esq.
March 24, 2008
Page 17

Howard Heiss /KWM
Howard Heiss

Paul Bergman /KWM
Paul B. Bergman

Encl.

# EXHIBIT A

EXHIBIT A

1. Ernst & Young LLP

2. Jenkens & Gilchrist ("J&G")

   - Please produce an index for the J&G documents, prepared by either the government or J&G, as you informed us you would in your October 16, 2007 letter. Please include in that index information relating to the entire universe of J&G documents in your possession and not just the limited universe you have produced thus far. We reserve the right to request the production of further documents from the J&G database after receipt and review of the index.

3. Bolton Capital Planning (includes any affiliated entity)

4. Arnold & Porter LLP

5. Sidley Austin LLP (includes any documents from the former Brown & Wood LLP)

6. Proskauer Rose LLP

7. Deutsche Bank AG ("DB")

   - In addition to the more than 10 million pages of documents you have produced to us in electronic format, please also produce the following:

      - in hard copy, any documents or memoranda produced to the government by DB that relate to any internal or other investigation conducted by Deutsche Bank in connection with this matter; and
      - an index for the electronic documents, prepared by either the government or DB.
      - In addition, please specify which documents in the DB electronic database you believe are material to the preparation of the defense and any documents from the DB database that the government intends to use in its case in chief at trial.

8. Quadra Capital Management LLC

9. UBS

10. Refco, Inc. ("Refco")

- In addition to documents obtained from Refco, please also produce any documents you have obtained or may obtain from any entity that acted as a swap or digital option counterparty or a lending institution in any of the CDS and/or CDS Add-On transactions including, but not limited to, any entity affiliated with Credit Suisse Group or Citigroup, Inc.

11. Bricolage Capital LLC (or any affiliated entities)

12. Jason Chai

13. Andrew Krieger

14. Deerhurst Management Company, Inc. (or any affiliated entities) ("Deerhurst")

- In addition to documents obtained from Deerhurst, please also produce any documents you have obtained or may obtain from any entity that acted as an investment manager, trader or clearing broker for any of the CDS partnerships.

15. Lehman Brothers, Inc. ("Lehman")

- Please provide us with a disk containing electronic versions of the paper copies produced by Lehman as you said you would in your December 4, 2007 letter.

16. Sheef & Stone LLP

17. Internal Revenue Service ("IRS")

- With respect to the IRS audit documents please provide a privilege log or other document explaining what documents are missing from the production and why.

18. Bear Stearns & Co., Inc.

19. Locke, Liddell & Sapp PLLC ("Locke Liddell")

- We believe that Locke Liddell had to have produced documents to you in addition to those it originally produced to the IRS in connection with the promoter penalty audit. Thus, we reiterate our request that you produce any and all documents from Locke Liddell in your possession.

2

20. John Cortese

21. William Esrey

22. Ronald LeMay

23. LaRocque Trading Partners

24. Cornerstone Group

25. Robert Cooper

26. Private Capital Management Company

27. Belle Six

   - Please provide us with clean copies of the documents you produced on July 6, 2007; certain of the ones you provided to us have Post-It notes copied onto them.

28. Fred Goldman

29. Mark Cuban

30. Todd Wagner

31. Marvin Herb

32. The Munro Family

33. Documents you have obtained from any entity not already identified in this Exhibit A that conducted a substantive review of any of the transactions identified in the indictment, including, but not limited to, any documents obtained from King & Spalding LLP relating to its review of the CDS transaction/s entered into by any Sprint executives.