UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA,                :

            - v. -                                         :                (S1) 07 Cr. 453 (SHS)

ROBERT COPLAN,                               :                **AFFIDAVIT OF**
MARTIN NISSENBAUM,                    :                **JOHN J. TIGUE, JR.**
RICHARD SHAPIRO,                         :
BRIAN VAUGHN,                              :
DAVID L. SMITH, and                       :
CHARLES BOLTON,                          :

                 Defendants.           :

------------------------------------x

STATE OF NEW YORK      )
                          ) ss.:
COUNTY OF NEW YORK   )

John J. Tigue, Jr., being duly sworn, deposes and says:

    1.    I am a principal of the firm of Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., attorneys for defendant Richard Shapiro ("Shapiro") in the above-captioned matter. I submit this affidavit in support of Shapiro's pretrial motion (a) to require the government to specify the nature of the criminality charged against him; (b) to dismiss the charges against him; and (c) to strike surplusage from the Superseding Indictment. I further submit this affidavit in support of the joint motion of defendants Robert Coplan, Martin Nissenbaum, Shapiro, Brian Vaughn, and Charles Bolton (the "defendants") for an order directing the government (a) to provide a bill of particulars; (b) to identify documents that it intends to offer at trial by no later than December 24, 2008; (c) to make immediate production of Brady material, to produce all Giglio material no later than December 1, 2008, and to produce Jencks Act materials no later than

1

December 24, 2008; (d) to provide a witness list by no later than December 24, 2008; and (e) to identify any evidence it intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence by no later than February 1, 2009.

    2.     On May 22, 2007, a grand jury returned an eight-count indictment charging defendants Coplan, Nissenbaum, Shapiro and Vaughn with one count of participating in a conspiracy to (a) defraud an agency of the United States, to wit, the Internal Revenue Service (the "IRS"); (b) evading income taxes due and owing by themselves, clients of Ernst & Young ("E&Y"), and other partners of E&Y; (c) corruptly obstructing and impeding the due administration of the internal revenue laws; and (d) making false statements to the IRS, all in violation of Title 18, United States Code, Section 371. It also charged Coplan, Nissenbaum and Shapiro each with a single count of tax evasion, in violation of Title 26, United States Code, Section 7201; Coplan and Nissenbaum each with a single count of obstruction of the due administration of the internal revenue laws in violation of Title 26, United States Code, Section 7212; and Coplan and Vaughn each with a single count of making false statements to the IRS, in violation of Title 18, United States Code, Section 1001.

    3.     On February 19, 2008, a grand jury returned a thirteen-count superseding indictment that added defendants Bolton and Smith (the "Indictment"). The Indictment retains the eight counts contained in the original indictment, adding Bolton and Smith as defendants in the conspiracy count, and removing obstruction of the due administration of the internal revenue laws as one of the objects of that conspiracy. The Indictment also charges Coplan, Nissenbaum, Shapiro, Vaughn and Bolton each with three counts of aiding and abetting income tax evasion, in violation of Title 26, United States Code,

Section 7201 and Title 18, United States Code, Section 2. Finally, it charges Smith with a single count of tax evasion, in violation of Title 26, United States Code, Section 7201, and a single count of filing a false tax return, in violation of Title 26, United States Code, Section 7206(1). A true and correct copy of the Indictment is attached as Exhibit A to this affidavit.

4. On June 22, 2007, the government began providing discovery to the defendants. Since that time, the government has produced over 15 million pages of electronic discovery and 155 boxes of hard copy documents from at least 20 sources. The government continues to produce more discovery on a regular basis. In fact, as recently as April 18, 2008, the government informed defendants that it would be producing approximately 60-70 GB of additional electronic discovery. (I am informed that 60-70 GB of electronic discovery is equivalent to approximately 1 million pages of data. This number is included in the over 15 million pages referenced above.)

5. In reviewing this voluminous discovery, defendants are aided by the fact that the government (a) has produced a separate box of "core documents," which it identified as being significant; (b) has, generally, provided the electronic discovery in word searchable databases; and (c) has provided indices for several of the collections it has produced. Although these tools are of some assistance in defendants' review of the electronic and hard copy discovery, defendants are still faced with the Herculean task of searching through, sorting and analyzing a staggering number of documents in order to prepare for trial.

6. The Indictment describes four types of tax shelter transactions, and refers to a total of 218 transactions in which 402 E&Y clients participated. Based on our

review of the discovery, it appears that several E&Y clients participated in more than one transaction and that approximately 325 E&Y clients invested in the 218 transactions identified in the Indictment. Moreover, the voluminous pretrial discovery refers to hundreds of individuals and entities that, in some way, touched the referenced transactions, including E&Y clients that ultimately decided not to enter into any of the transactions. As a result, it is impossible for defense counsel to identify the individuals alleged by the government to have been co-conspirators.

7. Given the passage of time, it is doubtful that the identification of the unidentified co-conspirators will negatively impact any possible on-going governmental investigation into the conduct charged in the Indictment.

8. At the arraignment held on February 22, 2008, Assistant United States Attorney Deborah E. Landis informed the Court that she believed the trial of this case would last approximately three months. Based on my experience, given the scope of Indictment, the volume of discovery produced to date, and the number and complexity of the transactions at issue, I believe that it is more likely that this trial will last between four and one-half months and six months.

9. By letter dated March 24, 2008, defendants made a formal request for more particularized items of discovery pursuant to the Federal Rules of Criminal Procedure; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny; and 18 U.S.C. § 3500 (the "March 24 Discovery Request"). A true and correct copy of the March 24 Discovery Request is attached as Exhibit B to this affidavit.

10. On April 9, 2008, Isabelle Kirshner, Esq., counsel for defendant Martin Nissenbaum, sent a letter to Ms. Landis requesting particulars on behalf of all defendants

(the "Nissenbaum Particulars Request"). A true and correct copy of that letter is attached as Exhibit C to this affidavit. A copy of the Nissenbaum Particulars Request was also sent to Assistant United States Attorneys Lauren Goldberg and Marshall Camp, who are now responsible for the prosecution of this case.

11. On April 15, 2008, Ms. Goldberg responded to the March 24 Discovery Request in a letter addressed to all defense counsel. A true and correct copy of that letter is attached as Exhibit D to this affidavit.

12. On April 18, 2008, all defense counsel addressed a letter to Ms. Landis requesting that the government identify all investors that had been or were being prosecuted for investing in (i) the purported tax shelters described in the Indictment, or (ii) other transactions the government claimed were designed to create the appearance of having been undertaken to generate profits or were actually intended to generate tax losses and deductions. A true and correct copy of this letter is attached as Exhibit E to this affidavit.

13. On April 22, 2008, Ms. Goldberg responded to the Nissenbaum Particulars Request in a letter addressed to all defense counsel. A true and correct copy of that letter is attached as Exhibit F to this affidavit.

14. By letter dated April 24, 2008, I asked the government to specify the transactions about which it intended to offer evidence of at trial. A true and correct copy of that letter is attached as Exhibit G to this affidavit.

15. Based on communications with Ms. Kirshner, it is my understanding that, on April 29, 2008, Ms. Kirshner discussed defendants' request for particulars with Ms. Goldberg and Mr. Camp. With respect to the defendants' April 24, 2008 request that the

government identify which of the 218 transactions referenced in the Indictment it intended to offer evidence of at trial, Ms. Goldberg informed Ms. Kirshner that the government (a) presently intended to offer at trial a summary chart listing all of the transactions in question; and (b) did not intend to present detailed evidence with respect to every transaction, but rather only as to a subset of transactions. Ms. Goldberg did not identify the transactions she intended to prove at trial, but indicated that she would do so as the trial date approached.

16. Counts Five, Six and Seven charge Coplan, Nissenbaum and Shapiro, respectively, with tax evasion in connection with their personal investment in a strategy described in the Indictment as similar to COBRA. See Indictment, ¶ 68. In my experience, it is highly unusual for the government to prosecute taxpayers who invest in tax shelters. I have consulted members of the Committee on Civil & Criminal Tax Penalties of the American Bar Association Section of Taxation, who have confirmed my view that tax shelter investors are generally not charged with tax evasion, except in those cases in which the investors are also alleged to have been involved in the development or promotion of the alleged shelter.

17. In United States v. Stein, 424 F. Supp. 2d 720, 724-25 (S.D.N.Y. 2006), the prosecution arising out of tax shelters designed and sold by KPMG LLP, the Honorable Lewis A. Kaplan directed the government to provide a bill of particulars specifying which transactions the government claimed were fraudulent as designed. A true and correct copy of the bill of particulars filed by the government in response to Judge Kaplan's order is attached as Exhibit H to this affidavit.

WHEREFORE, for the reasons set forth in the accompanying Memoranda of Law, to which this Court's attention is respectfully invited, as well as the Memorandum of Law in Support of the Discovery Motions Filed on Behalf of All Defendants, the Court should grant the relief sought in paragraph 1 above and the accompanying motion papers.

_____
John J. Tigue, Jr.

Sworn to before me this
5th day of May, 2008.

_____
Notary Public

MAUREEN SMITH
Notary Public, State of New York
No. 01SM5077496
Qualified in Kings County
Commission Expires May 12, 20 11