UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA         :
                                                  :

       -against-                   :
                                                  :      (S1) 07 CR 453 (SHS)

ROBERT COPLAN,               :
MARTIN NISSENBAUM,     :
RICHARD SHAPIRO,         :
BRIAN VAUGHN,             :
DAVID L. SMITH, and       :
CHARLES BOLTON,          :
                                                :

                   *Defendants.*     :

------------------------------------------------------------x

REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT MARTIN NISSENBAUM'S
PRE-TRIAL MOTIONS

CLAYMAN & ROSENBERG
305 MADISON AVENUE
NEW YORK, NEW YORK 10165
(212) 922-1080
Attorneys for Martin Nissenbaum

Of Counsel:

Isabelle A. Kirshner, Esq.
Brian D. Linder, Esq.

**ARGUMENT**

POINT I

THIS COURT SHOULD SEVER COUNTS FIVE,
SIX, SEVEN AND EIGHT PURSUANT TO
RULE 8(b), FED.R.CRIM.P.

Introduction

      Point I of defendant Martin Nissenbaum's Memorandum of Law seeks a

severance of counts five, six, seven, and eight pursuant to Rule 8(b), Fed.R.Crim.P. The

indictment alleges at least two wholly different series of acts or transactions. The so-called

Tradehill counts are not part of the same series of acts and transactions as are the remainder of

the conduct alleged in count one of the superseding indictment. The defendant's motion is

predicated on the oft- repeated principle that multiple defendants cannot be tried together on two

or more "similar" but unrelated acts or transactions; multiple defendants may be tried together

only if the charged acts are part of a "series of acts or transactions constituting an offense or

offenses." *Turoff*, 853 F.2d at 1043. Courts have looked to whether the joined offenses are

"unified by some substantial identity of facts or participants or arise out of a common plan or

scheme." *United States v. Sattar*, 272 F.Supp.2d 348, 378 (S.D.N.Y. 2003).

      The government has responded in its Memorandum of Law in Opposition to

Defendants' Pretrial Motions that joinder is appropriate because the allegations relating to the

Tradehill transaction are also included within the conspiracy charged in count one of the

indictment. The government also argues that, even if the Tradehill conduct were not charged in

count one, joinder of these counts would be proper because the two alleged schemes are

interrelated or flow from each other. Government Memorandum, p. 52. While we have no

quarrel with the general legal principles relied upon by the government, they provide no aid to the government's argument under the circumstances of the instant indictment.

Count One is Plainly Duplicitous On Its Face

The government argues that inclusion within the count one conspiracy of allegations relating to the Tradehill substantive counts forecloses any pretrial challenge to the joinder of these counts with the indictment. The government correctly notes that, as a *general* rule, when an indictment alleges the existence of an overall conspiracy linking various substantive crimes in an indictment, joinder of the substantive crimes may be appropriate at the pretrial stage. *United States* v. *Lech,* 161 F.R.D. 255, 256 (S.D.N.Y. 1995). However, this means no more than that " in determining whether joinder is proper, the court must look to 'the face of the indictment, and discern whether its allegations, taken as true, establish a single conspiracy...." *United States v. Moon*, 1998 WL 880056 at *3 (N.D.N.Y.). Rather than establishing a single conspiracy, however, the allegations of the indictment plainly establish multiple conspiracies. As summarized in the defendant's memorandum of law, pp. 9-10, the following facts support this contention. First, the income received by the Ernst & Young partners that was sought to be sheltered by the Tradehill transaction was unrelated to any activity within the scope of the alleged Ernst & Young tax shelter conspiracy. Second, the Tradehill transaction allegedly arose out of private discussions with Ernst & Young partners. Others, like defendants Vaughn and Bolton, had no knowledge of the transaction that generated the income that allegedly led to the Ernst & Young partners' participation in the transaction. Third, the transaction included the participation of eight Ernst & Young partners who are not alleged to have played any role in, or had any knowledge of, the Ernst & Young tax shelter conspiracy.

-2-

These factual observations are not challenged by the government. As a result, it cannot be said that the allegations of the indictment establish the requisite mutual dependence between these distinct schemes, or any common aim, or indeed any mutual awareness. *See United States v. Van Wort*, 887 F.2d 375 (2d. Cir. 1989).

The Tradehill Transaction Allegations Are Not Integrally Related to the Overall Conspiracy

In support of its argument that the Tradehill transaction allegations are integrally related to the overall conspiracy alleged in Count one, the government relies upon a series of generalizations with which we have no quarrel. Unfortunately, these generalizations have no relevance to the instant indictment.

The government notes that tax counts can properly be joined with non-tax counts where the funds derived from the non-tax count violations produce the unreported income. Government Memorandum of Law, p. 52. As noted above, there are no such allegations in this case.

The government notes that two or more schemes are properly joined under Rule 8(b) where proof of one scheme, which is inextricably related to the other, is helpful to a full understanding of the other. *United States v. Biaggi*, 909 F.2d 662, 676 (2d Cir. 1990). The allegations of the indictment fail to demonstrate that these schemes are, in fact, inextricably related. In *Biaggi*, the Court noted that the victim of one extortion scheme was utilized by the defendants to obtain benefits in the second extortion scheme. There is simply no such interrelatedness between the two schemes alleged in the instant indictment.

Nor can it be said with respect to the schemes alleged in the instant indictment that commission of the alleged Tradehill scheme could not have been committed but for commission

-3-

of the Ernst & Young tax shelter conspiracy.  Government Memorandum, p. 53.  The allegations of the indictment make clear that each transaction was independent of the other.

Accordingly, the allegations in counts five through eight of the indictment are not properly joined in the instant indictment.  The Court should grant the defendants' motion to sever these counts.

POINT II

DEFENDANT MARTIN NISSENBAUM IS
ENTITLED TO A BILL OF PARTICULARS
PURSUANT TO RULE 7(F), FED.R.CRIM.P.

In Point II of his Memorandum of Law, defendant Martin Nissenbaum sought

particularization of the allegations of the indictment specifically relating to the CDS Add-on

transactions. This transaction is particularly important because it serves as the basis for the tax

evasion counts alleged in counts two through four of the indictment, as well as a critical

component of the E&Y tax shelter conspiracy. The particulars sought with respect to this

transaction are "necessary to defendant's preparation for trial and avoidance of unfair surprise at

trial," *United States v. Strawberry*, 892 F.Supp. 519, 526 (S.D.N.Y. 1995). Particularization of

the charges is particularly appropriate where, as here, the indictment fails to identify the conduct

that a defendant undertakes in furtherance of a lengthy multi-faceted conspiracy. *United States v.

Barnes*, 158 F.3d 662, 665 (2d Cir. 1998). The government responds as it usually does: by

claiming that the defendant improperly seeks evidentiary detail. Yet, as *Barnes* makes clear, if a

bill of particulars is necessary to give a defendant enough information to prepare a defense to the

charges, it is irrelevant that the particularization sought would disclose the government's

evidence or theories. Here, the indictment and the discovery materials shed no light on Mr.

Nissenbaum's own conduct with respect to the CDS Add-on transaction. Under these

circumstances, a bill of particulars is appropriate.

With respect to the CDS Add-On transaction, the government first claims that a

bill of particulars is not necessary because the indictment includes references to actions taken by

-5-

"the E&Y defendants," a phrase that includes Mr. Nissenbaum. It is self-evident, however, that the indictment's use of this phraseology sheds little light on Mr. Nissenbaum's own conduct, or indeed the conduct of any one defendant. The government seeks to avoid this problem by citing the Court to two emails that are included in the discovery materials and which are said to elucidate his role in the CDS Add-on transaction. Government's Memorandum of Law, p. 86. Yet, each of these emails was written by another defendant, was addressed to multiple recipients, and was completely innocuous on its face. Moreover, there is no evidence that Mr. Nissenbaum responded to either one. Simply put, the indictment and the discovery materials do not provide Mr. Nissenbaum with sufficient information to prepare his defense to the substantive tax evasion charges alleged in counts two through four of the indictment, or to the CDS Add-on component of the count one conspiracy charge.

The defendant also sought particulars relating to several allegations in the indictment relating to the PICO transaction. Specifically, with respect to the PICO transactions, Mr. Nissenbaum requested that the government identify (a) who among the "conspirators" developed a false cover story to be provided to the IRS (Indictment, ¶57); and (b) who among the "conspirators" arranged for the balance of E&Y's fee to be paid by the client and created a phony contract (Indictment ¶ 58(f)). The government has responded that Mr. Nissenbaum's role in this aspect of the conspiracy is demonstrated by statements in his 2000 Self-Evaluation Forms indicating that Mr. Nissenbaum played a role in the development and sales of several SISG strategies, some of which are included in the indictment and including PICO. Government Memorandum of Law, p. 86. However, even if this were true, this would not assist the defendant in understanding where his conduct crossed the line from providing tax planning services and

-6-

legitimate tax avoidance to participating in a scheme the purpose of which was criminal tax evasion. It is essential for the defendant to understand what, if any, connection he had to any conduct that may have crossed this line. Absent particularization of the allegation that "conspirators" engaged in the conduct alleged in paragraphs 57 and 58(f), the defendant is deprived of vital information necessary to prepare his defense to these charges.

Accordingly, the Court should require the government to provide the defendant with the requested particulars.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum of Law in Support of Defendant Martin Nissenbaum's Pre-Trial Motions, the Court should grant Martin Nissenbaum's motions seeking an order of this Court (1) severing counts five, six, seven, and eight, relating to the Tradehill Transaction, pursuant to Rule 8(b), Fed.R.Crim.P., since they are improperly joined with the remaining counts of the indictment, (2) requiring the government to provide Mr. Nissenbaum with a bill of particulars relating to certain allegations in counts one, two, three, and four of the indictment, pursuant to Rule 7(f), Fed.R.Crim.P., and (3) permitting Mr. Nissenbaum to join in the applicable motions of his co-defendants.

Dated: New York, New York
      June 16, 2008

CLAYMAN & ROSENBERG

By: _____
      Isabelle A. Kirshner, Esq.
      Brian D. Linder, Esq.
      305 Madison Avenue
      New York, New York 10165
      (212) 922-1080